## JONATHAN P. WHITE *vs.* GEORGE H. SWAIN.

Bristol. Oct. 28, 1884. — Jan. 9, 1885. C. ALLEN & COLBURN, JJ.,
absent.

In an action by A. against B. for an assault, there was evidence that it was committed by B. on his own land, in self-defence, he being attacked by A. and C. *Held*, that B. was properly allowed to show that he had told C. that day not to come upon the land; and also to show that, shortly before the assault, C. (who was a witness at the trial in A.'s behalf) said to another person, "You wait a few minutes, and you will see some fun."

In an action for an assault, committed upon premises into the possession of which the defendant, after a suit with the plaintiff, had been put under an execution, evidence is incompetent that the officer who served the execution told the plaintiff, two days after such service, that he might have until the evening of the day of the assault to remove his property from the premises, the defendant having forbidden him to enter thereon.

TORT for an assault and battery. Answer: 1. A general denial. 2. Self-defence. Trial in the Superior Court, before *Knowlton*, J., who allowed a bill of exceptions, in substance as follows:

It appeared that there had been, for some time before the alleged assault, a controversy between the defendant on one side, and the plaintiff and one Bradley on the other side, in relation to a tract of land, part of which was occupied by the plaintiff and part by Bradley, and for which the defendant prosecuted a writ of entry against each of them, recovered judgment, and had been put in possession by the sheriff, under an execution, a short time before the alleged assault. There had been controversies and altercations between these parties growing out of their respective claims to this land, and there had been prosecutions, prior to the time of the alleged assault. Upon the land occupied by the plaintiff was a barn, standing a few feet from the highway, not separated from it by any fence, in which he kept a horse and wagon, and some other property.

The defendant testified that, on the day of the assault, he removed the plaintiff's horse and wagon from the premises out upon the highway; that he there had some talk with one Benson, who went there to get the horse from the barn for the plaintiff, and who soon after drove away with the horse and wagon; that, about an hour afterward, he was standing on the

premises near the barn, when the plaintiff came driving along the road, standing in the front part of the wagon, with Benson and Bradley sitting upon the floor of it with their feet hanging out behind; that the plaintiff turned from the road and drove towards the barn, and the defendant motioned him away with his hand and forbade him to enter upon the premises; that the plaintiff drove upon the defendant's land, and the defendant took the horse by the bit and turned him off into the road, whereupon the plaintiff jumped out of the wagon and assaulted him; that while he was being assaulted, he struck the plaintiff in self-defence; that, before this, Bradley picked up a large stone and put it in the plaintiff's hand, and the plaintiff struck the defendant with it; and that Benson called to Bradley, "Come and help us."

The plaintiff testified that, at the time of the assault, he was driving towards the barn, with Benson and Bradley sitting in the wagon; that the defendant did not motion him away with his hand, but caught the horse by the bit, while he was in the road approaching the barn, before he had got upon the defendant's land; that the horse stopped so suddenly that he then fell forward out of the wagon upon the ground; and that the defendant caught him, and attacked him, while he did nothing but to attempt to defend himself from the attack. He called several witnesses, and among them Benson, whose testimony tended to corroborate him in these particulars. Benson also testified that he and Bradley jumped out of the wagon behind, before the horse was stopped; and that he thought the plaintiff was about to turn off in the road and back up to the barn.

It appeared, and was not disputed, that the plaintiff was at work that day at a house some distance away from the barn; that he had lent his horse to Benson that forenoon, and arranged with Benson to go to the barn and bring him his horse and wagon that afternoon; and that Benson took the horse and wagon in accordance with that arrangement at the time he drove away from the barn, and went with it to the place where the plaintiff was working. There was evidence that they had some low talk together there which the witness did not understand; that soon after, the plaintiff having got through his work, they went away in the wagon in the direction of his house,

which was also the direction of the barn ; and that they took in Bradley on the way, and went directly to the place where they met the defendant, and where the altercation occurred.

There was also evidence that, several days before, the defendant had placed a sign upon the land immediately in front of the barn, forbidding all persons trespassing; and that it had been removed the night after it was placed there.

The defendant was permitted to ask Benson, on cross-examination, against the plaintiff's objection, what the defendant said to him immediately before he drove away with the horse and wagon from the barn before the assault. The witness answered, " He told me, if that team was in my care, to take it away from there, and not bring it back there again." He also testified that he did not communicate to the plaintiff what the defendant told him.

One Gangon was also permitted to testify, subject to the plaintiff's exception, that on this occasion the defendant also forbade Benson coming on the premises again; and that, directly after, Benson said to the witness, not in the defendant's hearing, " You wait a few minutes, and you will see some fun." Benson, on cross-examination, had denied that he had said this to Gangon.

The plaintiff offered to prove that one Dexter, the deputy sheriff who served the execution for possession of the land in the defendant's favor against him, told him, two days after he had put the defendant in possession under the execution, that he might have until the evening of the day of the assault to remove his property from the barn. Upon the defendant's objection, this evidence was excluded.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*E. L. Barney,* for the plaintiff.

*J. Brown,* for the defendant.

DEVENS, J. Benson was not only a witness, but, as there was evidence tending to prove, was a participant in the assault alleged by the defendant to have been committed upon him. As this assault occurred on the defendant's premises, it was proper to show, both by Benson's cross-examination and by the direct evidence of another witness, that he had been forbidden

by the defendant again to come on the premises, especially when connected with the remark to the other witness, "You wait a few minutes, and you will see some fun." This connection of the witness with the transaction might well be deemed by the jury liable to prejudice him in the account which he gave of it.

It was not competent for the plaintiff to prove that the deputy sheriff who had put the defendant in possession of the premises had, two days after, given leave to the plaintiff to enter on the premises and take off his property there at any time during the day of the alleged assault. Such license the officer had no authority to give, and, even if the plaintiff had received a license from the defendant himself, when the defendant resisted his entry, (which appeared by the plaintiff's own statement, although he contended that the defendant did not motion him away with his hand,) he had no right to persist in it.

*Exceptions overruled.*